## DECLARATION of KEITH DRUFFEL

I, KEITH DRUFFEL, do hereby declare:

### BACKGROUND/EXPERIENCE

1. I am a Special Agent of the Internal Revenue Service-Criminal Investigations (IRS-CI) assigned to the Eugene, Oregon Post of Duty, and have been so employed since 2007. As a Special Agent, I investigate possible violations of the Internal Revenue Code (Title 26 United States Code), the Money Laundering Control Act (Title 18 United States Code), the Bank Secrecy Act (Title 31 United States Code), and other criminal violations.

### PURPOSE OF THIS DECLARATION

2. This declaration is submitted for purpose of seeking *in rem* forfeiture of real property purchased and controlled by Talon White (hereinafter "White") and located at 935 SW 7th Street, Newport, Oregon 97365 (hereinafter "935 SW 7th Street"), which represents proceeds traceable to a violation of 18 U.S.C. § 2319 (Copyright Infringement) and property involved in a transaction in violation of 18 U.S.C. § 1957 (Money Laundering), thereby subjecting the real property to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and 18 U.S.C § 2323.

3. The real property located at 935 SW 7th Street was purchased by White on or about January 30, 2017. The real property is known and described as:

> **Lot 10, Block 81, BAYLEY AND CASE'S THIRD ADDITION TO NEWPORT, Lincoln County, Oregon.**
>
> Account: **R371036**
>
> Map & Tax Lot: **11-11-08-CB-07300.**

4. Based on evidence obtained in this investigation, including White's e-mails, declarations from the Motion Picture Association of America (hereinafter "MPAA"), federal tax

**Declaration of Keith Druffel**                                                                EXHIBIT A   PAGE 1

return information, bank records, and property title records, there is probable cause to believe, and I do believe, that beginning in at least 2013 and continuing to the present, White engaged in a scheme with other known and unknown co-conspirators to reproduce and distribute copyrighted material, including motion pictures and television broadcasts, for the purpose of personal financial gain by making it available on a computer network accessible to members of the public by subscription.  The subscription fees, which represent the proceeds of the copyright infringement, were processed through PayPal and Stripe accounts associated with White and then deposited into various bank accounts controlled by White. One particular bank account, a Wells Fargo account ending in 5111, received over $1,400,000.00 in proceeds. White then wired $333,455.27 from the Wells Fargo account to Western Title & Escrow to complete the purchase 935 SW 7th Street.

5. The information contained in this declaration is based on my personal knowledge, as well as information obtained from other law enforcement personnel, information obtained from financial property records and cooperating witnesses. The information set forth here is provided solely for the purpose of establishing probable cause in support of the complaint *in rem* and therefore, it does not include each and every fact that I or others have learned during the course of this investigation.

## SUMMARY OF THE INVESTIGATION

6. In October 2013, Homeland Security Investigation (hereinafter "HSI") agents received information from PayPal regarding websites identified as www.noobroom.com and www.noobroom7.com that allowed subscribers to stream and download copyrighted movies and television shows. HSI agents contacted the MPAA regarding these websites, requesting they open an investigation to determine if the websites were authorized by member studios to offer

**Declaration of Keith Druffel**                                                      EXHIBIT A   PAGE 2

the copyrighted content to subscribers. The MPAA assists the motion picture and television industry to protect their intellectual property rights, including copyrights. Specifically, the MPAA monitors the illegal reproduction and distribution of American motion pictures and television programs.

7. In November 2013, the MPAA provided a report of their investigation to HSI. According to the MPAA report, www.noobroom7.com and its associated websites www.noobroom5.com and www.noobroom9.com (hereinafter referred to collectively as "Noobroom") were distributing, without authorization from the copyright holder, motion pictures and television shows that are protected by United States copyrights. The MPAA determined that many of the movies available on Noobroom were from member studios and that Noobroom was not authorized to allow the content to be downloaded or streamed. The MPAA reported that Noobroom generated revenue through the sale of subscriptions which allowed users to either stream or download copyrighted content.

8. The MPAA reported that Noobroom not only received revenue from subscription payments from users of the websites, but also received revenue from advertisements placed on its webpages by a company identified as Lanista Concepts (hereinafter "LC"). The subscription payments were being processed through Stripe. Stripe is a United States based technology company which allows both private individuals and businesses to accept payments over the internet, similar to PayPal.

9. On July 17, 2014, the MPAA sent an e-mail to noobdmitri@gmail.com and donutdmitri@gmail.com, two contact e-mails for Noobroom, directing them to cease and desist operating the illegal website. The content of the e-mail notified the operator of Noobroom that they were violating copyright laws and requested they take immediate steps to address the

**Declaration of Keith Druffel**                                                    EXHIBIT A   PAGE 3

copyright infringement of MPAA Member Studios' motion pictures and television programs. Attached to the letter was a list of motion pictures and television programs being used illicitly by Noobroom that were owned or controlled by MPAA Member Studios. Approximately five days after the MPAA sent the cease and desist letter to Noobroom, the MPAA received an e-mail to its undercover subscription at Noobroom. The e-mail was from noreply@noobroom.com with the subject, "Noobroom Important Update." The e-mail advised that user accounts had been moved to a new website, www.superchillin.com (hereinafter "Superchillin").

10. HSI Agents were able to download movies from Superchillin and obtained IP address information while downloading those movies. With this information, they identified the company hosting the servers used by Superchillin as Hosting Services Inc. The account associated with the IP addresses was held in White's name and included a phone number frequently associated with White.

11. Through additional investigative efforts, two more sites linked to White were identified — Movietv.to and Sit2play.com (hereinafter "Movietv" and "Sit2play"). In June 2016, HSI Agents attempted to login to Movietv and were redirected to Sit2play, which accepted the login information for Movietv. Sit2play appeared to be a near mirror image of Movietv in both content and appearance. In 2017, HSI Agents attempted to renew the subscription to Movietv and found the Movietv address had a notification posted that the site was moved to Sit2play. The registrant, technical, administrative, and billing contacts for Sit2play were listed as White, with company "NB" and e-mail address heyitstalon@hotmail.com, an email the investigation determined belonged to White.

12. HSI Agents downloaded content from Superchillin, Movietv, and Sit2play throughout 2016 up to the present. The MPAA reported that the subject websites listed above were

**Declaration of Keith Druffel**                                   EXHIBIT A   PAGE 4

distributing, without authorization from the copyright holder, motion pictures and television shows that are protected by U.S. Copyrights. The MPAA determined that many of the movies available on the subject websites were from member studios and that the subject websites were not authorized to allow the content to be downloaded or streamed. The MPAA reported that the subject websites generated revenue through the sale of subscriptions which allowed users to either stream or download copyrighted content. Also, the MPAA advised that the content downloaded by HSI contained copyrighted material and the MPAA provided certification as such.

13. Based on financial records obtained during the investigation, I determined that White received substantial revenue from the above-listed websites. In 2018, he was averaging over $500,000 per month. In 2017, White received over $2.2 million. In 2016, White received over $1 million in revenue, and in 2014 and 2015, White received on average about $400,000 a year in revenue.

*Financial Analysis*

14. Subscribers to the various websites run by White paid for their subscriptions via Paypal or Stripe. Those payments were then deposited into bank accounts controlled by White. A financial analysis was conducted of all of those accounts. Because the Stripe account was the most significant source of funds into the Wells Fargo account ending in 5111 and the proceeds from that account were used to purchase 935 SW 7th Street, the analysis in this affidavit is focused on the Stripe account and Wells Fargo account 5111.

15. Stripe provided information related to White's Stripe account that accepted subscription payments. The bank account, phone number, and email address provided matched

White's information. The product description for the account was listed as "Selling stock tip subscriptions via email."

16. Investigators reviewed payments received into the Stripe account from October 5, 2015 to December 25, 2016. There were 78,985 payments received in the amount of $9.99 for a total of $789,060.15; 7,611 payments received in the amount of $25.49 for a total of $194,004.39; and 5,348 payments received in the amount of $44.99 for a total of $240,606.52, for a grand total of $1,223,671.24. The above-listed amounts correspond to the listed subscription costs on Sit2Play and Movietv. Therefore, I believe the payments received by Stripe are the subscription fees for the websites.

17. Payments into White's Stripe account were reviewed for the timeframe of October 1, 2016 to September 20, 2018. There were 302,905 payments for the amount of $9.99 totaling $3,026,020.95, 45,050 payments for the amount of $25.49 totaling $1,148,324.50 and 48,888 payments for the amount of $44.99 totaling $2,199,471.12. The total amount of the above listed payments into White's Stripe account was $6,373,816.57. The above listed amounts correspond to the cost of subscriptions to the websites and represent proceeds from the violation of 18 USC 2319 Criminal Copyright Infringement.

18. Further review of White's Stripe account showed that through August 2018, over $3 million was transferred from the Stripe account to White's Wells Fargo account 5111 and another account controlled by White at Chase Bank.

19. The Wells Fargo account ending in 5111 was opened on September 24, 2015. The majority of the deposits made into this account consisted of subscriptions to the movie websites established by White.

20. From September 24, 2015 until March 27, 2017, when the account closed, $1,422,477 was deposited into the Wells Fargo account from the Stripe and PayPal accounts. Of that, well over a million dollars was from Stripe and the rest was from PayPal.

*Purchase of 935 SW 7th Street, Newport, Oregon*

21. Records received from Western Title Company show Talon White purchased 935 SW 7th Street for $336,000.00 on or about January 30, 2017. The amount of $333,455.27 was wired from the Wells Fargo account ending in 5111 to Western Title & Escrow on January 27, 2017. This represents the balance of $336,000.00 purchase price after earnest money and fees. White was the only signor on the Wells Fargo account ending in 5111. The majority of the deposits—over 1.4 million dollars—made into this account since opening have been electronic transfers from Paypal and Stripe, which collected the subscription fees associated with White's illegal movie streaming websites.

22. This purchase also represents a monetary transaction in criminally derived proceeds over $10,000.00, specifically proceeds of the copyright infringement obtained through the selling of subscriptions to the subject websites. Specifically, $333,455.27 which was wired from the Wells Fargo account ending in 5111 to Western Title & Escrow on January 27, 2017, for the purchase of 935 SW 7th Street.

**CONCLUSION**

23. Based on the foregoing, I have probable cause to believe, and I do believe, that White and others were involved in a conspiracy to commit and committed copyright infringement and money laundering, in violation of 18 U.S.C. §§ 1957 and 2319 from at least 2013 through the present. During the scheme, White was found to have no verifiable legitimate income sources and all the money in the Wells Fargo Bank Account appears to be the proceeds of his copyright

**Declaration of Keith Druffel**                                            EXHIBIT A   PAGE 7

infringement. These funds were used to purchase 935 SW 7th Street, making it property constituting or derived from proceeds of the copyright infringement and subject to forfeiture under 18 U.S.C. §§ 2323 and 981(a)(1)(C). In addition, White used more than $10,000.00 of those proceeds in the Wells Fargo account to purchase the home. By engaging in this financial transaction of over $10,000.00 with proceeds, he also committed money laundering and thus, the property is also property involved in a violation of 18 U.S.C. § 1957 and subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 28th day of November 2018.

*s/ Keith Druffel*
Keith Druffel
Special Agent
IRS-CI
